UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: | CASE NO. |
| **SOUTH LOUISIANA ETHANOL, LLC** | **09-12676** <br> **SECTION A** |
| DEBTORS | CHAPTER 11 |
| **SOUTH LOUISIANA ETHANOL, LLC** | ADVERSARY NO. |
| PLAINTIFF | **09-1119** |
| VERSUS | |
| **WHITNEY NATIONAL BANK, ET AL** | |
| DEFENDANTS | |

## **MEMORANDUM OPINION**[1]

Industrial Process Technology, Inc. ("IPT") filed suit in the United States District Court for the Eastern District of Louisiana to liquidate its debt against J&C Welding & Fabrication, Inc. ("J&C') and South Louisiana Ethanol, LLC ("SLE"). It also requested recognition of its Private Works Act ("PWA") lien allegedly securing the debt. Englobal Engineering, Inc. and Englobal Construction Resources, Inc. (collectively "Englobal") filed a Motion to Intervene in the suit, which was denied.[2] Ultimately, judgment was rendered in favor of IPT in the amount of $733,336.46 ("IPT Judgment"). The IPT Judgment also recognized the lien of IPT as security for the repayment of the amounts owed.

---

[1] To the extent this Court does not have subject matter jurisdiction over this matter pursuant to *Stern v. Marshall*, 131 S.Ct. 2594, 79 USLW 4564 (2011), this Opinion will be considered a Report and Recommendation to the U. S. District Court.

[2] Englobal appealed the denial of its Motion to Intervene, but the appeal was stayed as a result of SLE filing its bankruptcy petition.

Following entry of the IPT Judgment, SLE filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code on August 25, 2009 ("Petition Date"). This adversary proceeding was instituted by SLE to determine the nature, extent, validity, and ranking of all claims against its estate. Specifically, J&C, IPT, and Whitney National Bank ("Whitney") were named, with others, as defendants. A prior Order of this Court recognized that Whitney holds a security interest in the property subject to IPT's judgment and lien.[3] As a result of competing claims, Whitney filed a cross-claim against IPT challenging the amounts owed, the validity of IPT's lien, and its ranking *vis a vis* Whitney's security interests. IPT filed this Motion for Partial Summary Judgment ("IPT Motion") in response, requesting that its lien be declared valid as to all parties.

**Summary Judgment Standard**

Summary Judgment is proper when no genuine issues of material fact exist, and the moving party is entitled to judgment as a matter of law.[4] The Court must view the evidence introduced and all factual inferences in the light most favorable to the party opposing summary judgment.[5]

**Facts**

The facts of this controversy are not in dispute. The ethanol plant securing the IPT Judgment was commissioned by SLE for construction. Englobal was the general contractor for the project and subcontracted with J&C for a portion of its work. J&C in turn subcontracted a share of its work to IPT.

---

[3] Pleading 536.

[4] *Hassan v. Lubbock Independent School District*, 55 F.3d 1075, 1079 (5th Cir. 1995); Fed. R. Civ. Proc. 56(c); Bankruptcy Rule 7056(c).

[5] *Hightower v. Texas Hospital Ass'n,* 65 F.3d 443, 447 (5th Cir. 1995).

2

IPT sued SLE, J&C, and HPS Development, LLC ("HPS") in Federal District Court to liquidate its claim and recognize its lien.[6] Englobal attempted to intervene but its Motion to Intervene was denied. The IPT Judgment was entered and is now final. The legal question remaining is its effect on non-parties.

SLE owns real property and equipment located in Belle Chasse, Louisiana. SLE originally intended to refurbish an existing ethanol manufacturing plant but the project was abandoned prior to completion. On the Petition Date, several parties claimed security interests in SLE's property including Englobal, Whitney, IPT, and J&C. SLE has marketed the property for sale on both an *en globo* and piecemeal basis. While some equipment has been sold, the bulk of SLE's plant is still intact. An auction of the SLE plant was conducted, but the sale did not net sufficient funds to satisfy all secured claims.

Thus, the ranking of security interests against the plant is critical to a determination of distribution. The IPT Motion questions Whitney and Englobal's ability to challenge the validity of IPT's lien in light of the IPT Judgment.

IPT argues that the IPT Judgment is *res judicata* and that Whitney and Englobal's cross-claims constitute a collateral attack. Whitney counters that the validity of the IPT lien is an open issue as it was not a party to the suit that recognized its validity.

---

[6] *IPT v. J&C Welding Fabrication, Inc., et al*, 08-cv-04008, U. S. District Court, Eastern District of Louisiana.

**Law and Analysis**

**Sufficiency of Pleading**

Englobal argues that IPT did not raise either issue or claim preclusion in any of its pleadings. While it is true that "the defense of res judicata must be affirmatively pled."[7] The Fifth Circuit has recognized two (2) situations in which courts may raise the issue:

1. "[I]n the interest of judicial economy res judicata may properly be raised by a district court sua sponte, particularly where both actions are brought in courts of the same district;" and

2. "[A]ll relevant data and legal records are before the court and the demands of comity, continuity of law, and essential justice mandate judicial invocation of the principles of res judicata."[8]

At the January 7, 2011, hearing on Englobal's Motion for Summary Judgment filed against IPT, the Court raised the question as to the *res judicata* effect of the IPT Judgment.[9] Issue preclusion was properly raised because all relevant data and legal records were before the Court, the IPT Judgment had been issued by the District Court for the Eastern District of Louisiana, and the demands raised by Englobal called into question the correctness of the IPT Judgment potentially resulting in inconsistent results and collateral attack.

**The Court's Ruling on the "Tradewinds" Issue**

Englobal raised in its Supplemental Opposition this Court 's prior holding on the nature and extent of IPT's PWA lien.[10] After the *res judicata* effect of the IPT Judgment was raised, the parties

---

[7] *Carbonell v. Louisiana Dept. of Health & Human Resources*, 772 F.2d 185, 189 (5th Cir. 1985).

[8] *Id.*

[9] Tr. T. 1/7/11, pleading 445.

[10] Pleading 543.

4

requested a status conference on the adversary proceeding. At that conference, the parties, by agreement, requested that the ruling on Englobal's Motion for Summary Judgment be deferred until a second Motion for Summary Judgment was decided ("Tradewinds Motion").[11]

The request reserved all rights in favor of IPT, specifically that should the Court find its lien recognized by the IPT Judgment be limited or deficient, IPT reserved the right to meet the challenge with its claim of *res judicata*. Because the Tradewinds Motion involved other PWA lien claimants in addition to IPT, a denial of the Tradewinds Motion would eliminate the need to decide the IPT Motion, and the parties orally stipulated to IPT's reservation of rights, the Court agreed that judicial economy would be served by deferment of a decision on the IPT Motion.

The Tradewinds Motion[12] sought to invalidate certain PWA liens based on the principles espoused in *Trade-Winds Environmental Restoration, Inc., v. Stewart Development, LLC, et al* ("Tradewinds Issue")."[13] Under *Tradewinds*, the United States Court of Appeal for the Fifth Circuit held that a contractor without a valid contractor's license could not assert a PWA lien under Louisiana law. The parties alleged that IPT did not hold a valid contractor's license and, therefore, was prohibited from asserting a lien.

SLE and Whitney filed the Tradewinds Motion jointly as to the other unrelated PWA lien, but only Whitney sought summary judgment against IPT. SLE and Whitney specifically reserved "all other objection to the validity of the PWA liens."[14] On May 9, 2011, this Court entered a

---

[11] Pleading 489.

[12] Pleading 479.

[13] *Trade-Winds Environmental Restoration, Inc., v. Stewart Development, LLC, et al*, 2011 WL 396481, *2 (5th Cir. 2011).

[14] *Id.* at paragraph 3.

Judgment[15] on the Tradewinds Issue. Based on the law, this Court held that IPT's lien would secure only a portion of the amounts due.

### Res Judicata

The legal concept *res judicata* is composed of two (2) distinct principles, claim preclusion and issue preclusion.[16] Claim preclusion prohibits the relitigation of the same claim whether or not it was raised in the preceding suit.[17] Issue preclusion forecloses the litigation of the same issue of fact or law actually litigated and resolved by judgment.[18] Claim preclusion was formerly known by the doctrines of "merger" and "bar," while issue preclusion was commonly referred to as "collateral estoppel."[19] While the United States Supreme Court expressed its belief that the change in nomenclature has rectified prior confusion over the applicability of the doctrines, this Court is not so sure.

The preclusive effect of a federal court judgment is determined by federal common law.[20] Preclusion is subject to due process limitations.[21]

---

[15] Pleading 537.

[16] *Taylor v. Sturgell*, 553 U.S. 880, 892, 128 S.Ct. 2161, 2171 (2008).

[17] *Id.*

[18] *Id*.

[19] *Id.* at n.5.

[20] *Semtek Int'l Inc. v Lockheed Martin Corp*., 531 U.S. 497, 507-508, 121 S.Ct. 1021, 149 L Ed2d 32 (2001).

[21] *Richards v. Jefferson County*, 517 U.S. 793, 797, 116 S.Ct. 1, 135 L.Ed.2d 76 (1996).

Issue preclusion bars "successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment, even if the issue recurs in the context of a different claim."[22] By "preclud[ing] parties from contesting matters that they have had a full and fair opportunity to litigate," these two doctrines protect against "the expense of vexation attending multiple lawsuits, conserve[] judicial resources, and foster[] reliance on judicial action by minimizing the possibility of inconsistent decisions."[23]

Issue preclusion bars SLE, J&C, and HPS from relitigating the validity or amount owed to IPT by SLE as each was a party to the case and is, therefore, bound by the IPT Judgment. However, Whitney and Englobal argue that they were neither noticed nor served with the IPT suit and are, therefore, not bound by the IPT Judgment.

> A person who was not a party to a suit generally has not had a "full and fair opportunity to litigate" the claims and issues settled in that suit. The applicability of issue preclusion to nonparties thus runs up against the "deep-rooted historic tradition that everyone should have his own day in court" *Richards*, 517 US at 798, 116 S.Ct. 1761(internal citations omitted).....Indicating the strength of that tradition, we have often repeated the general rule that "one is not bound by a judgement in personam in a litigation in which he is not designated as a party or to which he has not been made a party by service of process." *Hansberry*, 311 US at 40, 61 S.CT. 115, See also, eg Richards, 517 US at 798, 116 S Ct. 1761; *Martin v. Wilks*, 490 US 755, 761, 109 S. Ct. 2180, 104 Led.2d 835 (1989); *ZenithRadio Corp v. Hazeltine Research, Inc.,* 395 US 100, 110, 89 S.Ct 1562, 23 Led 2d 129 (1969).[24]

---

[22] *New Hampshire v. Maine*, 532 U.S. 742, 748-749, 121 S.Ct. 1808, 149 L.ed2d 968 (2001).

[23] *Montana v. United States*, 440 U.S. 147, 153-154, 99 S.Ct. 970, 59 L.Ed.2d 210 (1979).

[24] *Taylor*, 553 U. S. at 892-893.

The rule against nonparty preclusion is subject to six (6) exceptions:

1. "A person who agrees to be bound by the determination of issues in an action between others is bound in accordance with the terms of his agreement."

2. "[N]onparty preclusion may be justified based on a variety of pre-existing 'substantive legal relationships' between the person to be bound and a party to the judgment. ... Qualifying relationships include, but are not limited to, preceding and succeeding owners of property, bailee and bailor, and assignee and assignor."

3. "'In certain limited circumstances,' a nonparty may be bound by a judgment because she was 'adequately represented by someone with the same interests who [wa]s a party' to the suit."

4. "[A] on party is bound by a judgment if she 'assume[d] control' over the litigation in which that judgment was rendered."

5. "[A] party bound by a judgment may not avoid its preclusive force by relitigating through proxy" or agent.

6. "[I]n certain circumstances a special statutory scheme 'may expressly foreclos[e] successive litigation by nonlitigants ... if the scheme is otherwise consistent with due process," including "bankruptcy and probate proceedings, and *quo warranto* actions or other suits that, 'under [the governing] law, [may] be brought only on behalf of the public at large.'"[25]

A nonparty has been adequately represented if:

1. "[T]he interests of the nonparty and her representative are aligned."

2. "[E]ither the party understood herself to be acting in a representative capacity or the original court took care to protect the interests of the nonparty."

3. "Sometimes" ... "notice of the original suit to the persons alleged to have been represented." For example, "class actions seeking monetary relief."[26]

---

[25] *Id.* at 894-895 (citations omitted).

[26] *Id.* at 900.

8

**What is the nature of Whitney and Englobal's claims against IPT?**

No privity of contract exists between either IPT and Whitney or IPT and Englobal. Both Whitney and Englobal allege a debt owed by SLE, and each claims a security interest in property of SLE's estate. Similarly, IPT holds a judgment against SLE which recognizes its PWA lien. The legal positions of Whitney, Englobal, and IPT are independent of the others, except to the extent that success of either bears on the other's ability to collect. From this perspective, Whitney, Englobal, and IPT are no different than any random pair of creditors of this estate, whether secured or unsecured.

Whitney argues that under Louisiana law, a secured claimant may intervene in a foreclosure action and challenge a seizing creditor's claim in the intervener's collateral.[27] Whitney asserts that as a result, Louisiana law creates an independent cause of action in its favor allowing it to challenge any claim against its borrower.

Whitney and Englobal assert that fatal flaws exist in IPT's lien and seek to litigate defenses to its validity which were or could have been raised by SLE in the prior suit.[28] Whitney and Englobal aver that faced with mounting debt and fully encumbered assets, SLE submitted to summary judgment on the issue because the outcome of the matter had no practical consequence to SLE. As such, Whitney and Englobal argue that they, not SLE, was the real party in interest in the IPT suit.

---

[27] La. C.C.P. 1092.

[28] A flaw in IPT's lien alleged by Whitney is the Tradewinds Issue. Had this Court decided completely against Whitney on the Tradewinds Issue, Whitney would no longer have grounds to try to challenge the IPT Judgment, in so far as it recognized the lien.

**Only a party in interest is properly a party to an action.**

Whitney argues that it occupies a special position *vis a vis* SLE and IPT as a secured claimant in property which also collateralizes IPT's debt. While Louisiana law allows Whitney to challenge the validity of that collateral interest in the context of a foreclosure,[29] and bankruptcy law permits any interested party the right to challenge a claim in the case,[30] the right to challenge is not limitless.

While Whitney and Englobal could, under 11 U.S.C. § 502(a), object to IPT's proof of claim as "parties in interest," in doing so, they would stand in the shoes of the debtor. As such, they could only assert positions available to SLE at the time of challenge.[31] SLE may not challenge the validity of the IPT Judgment due to the principle of *res judicata*. Thus, Whitney and Englobal are similarly barred as SLE's creditors.

As to Whitney's rights under Louisiana law, nothing in the law supports Whitney's theory that Louisiana Code of Civil Procedure article 1092 created an independent cause of action in Whitney's favor, allowing it to challenge IPT's lien. While La. C.C.P. article 1092 provides a mechanism for a non-party creditor to challenge a seizing creditor's claim to the non-party's collateral, the right is limited to a foreclosure action. Further, nothing in the article allows a third party to plead issues unavailable to the borrower/defendant.

---

[29] La. C.C.P. 1092

[30] 11 U.S.C. § 502(a).

[31] *In re JNS Aviation, LLC*, 334 B.R. 202, 204 and 206 (Bankr.N.D.Tex. 2005).

Rules of procedure do not create substantive rights but merely provide for the prosecution of rights that already exist.[32] Under Louisiana Civil Code article 2044, if an action by one's obligor causes or increases his insolvency, the creditor may assert the claims or defenses to payment held by the obligor. However, the creditor is not entitled to assert claims otherwise unavailable to the obligor.

In *Boxx v. Bart's on the Lake, Ltd*,[33] Boxx, a subcontractor, obtained a default judgment pursuant to the PWA against Bart's. When the Sheriff attempted to satisfy the judgment through a seizure of movables allegedly owned by Bart's, the actual owner of the movables intervened in the suit to protect its ownership. In attacking the seizure, the real owner first alleged that the judgment was wrongfully obtained as Boxx had not properly perfected its PWA lien. Although the third party alleged that, pursuant to La. C.C.P. article 1092, it held a right to substantively challenge the lien post-judgment, the court disagreed. The court denied the third's party's challenge to the judicial recognition of the judgment because the judgment was final and the law did not permit the third party to look behind the correctness of its entry.[34]

As explained in *Boxx*, La. C.C.P article 1092 provides a vehicle for a person claiming a mortgage or privilege on seized property to assert his claim by intervention for the purpose of

---

[32] "Rules of procedure exist for the sake of substantive law and to implement substantive rights, not as an end in and of itself." *Radcliffe 10, LLC v. Zip Tube Systems of Louisiana, Inc.*, 30 So.3d 825, 831, 2009-0417 (La.App. 1 Cir. 12/29/09).

[33] *Boxx v. Bart's on the Lake, Ltd*., 611 So.2d 748 (La.App. 4 Cir. 1992).

[34] The court did reverse and remand on the question of whether or not the property seized was the property of Bart's and, therefore, subject to seizure.

11

ranking creditors against the proceeds of the sale.[35] Nothing in the statute provides that the intervening creditor may challenge a final judgment on its merits, merely its rank *vis a vis* other interests.

An analogy can also be made between the instant case and the case of *Guichard Drilling Co. v. Alpine Energy Services, Inc.*[36] In *Guichard*, the Court found that the purpose of the Oil Well Lien Act "to protect subcontractors," would be undermined if "everyone who has an ownership interest ...subject to a lien was an indispensable party."[37] The Court in *Guichard* used the PWA as an example to support its position:

> [T]he legislature could have specifically set out who must be sued in order to enforce a lien under the Oil Well Lien Act, but chose not to do so. In the Private Works Act, which creates a privilege for laborers and materialmen, among others, against an immovable in relation to construction projects on that immovable, which is similar to the lien created under the Oil Well Lien Act, the legislature specifically provided that the privilege is extinguished if: "The claimant or holder of the privilege does not institute an action against the owner for the enforcement of the claim or privilege within one year after the expiration of the time given by La. R.S. 9:4822 for filing the statement of claim or privilege to preserve it...." (emphasis added). La. R.S. 9:4823(A)(2). Thus the legislature has demonstrated that when it intends that specific person must be named in a suit to enforce a particular privilege it clearly designates who should be named[38]

The *Guichard* Court also found:

> [U]nder the scheme set up in the Oil Well Lien Act, a judgment recognizing a claimant's lien on the subject property has effect against the whole of the property subject to the lien, even though every person with an interest in property subject to

---

[35] *David Oil Co. v. Mills,* 873 F.2d 774, n. 19 (5th Cir. 1989); *also see* La. C.C.P. art 2643.

[36] *Guichard Drilling Co. v. Alpine Energy Services, Inc.*, 657 So.2d 1307, 94-1275 (La. 7/3/95).

[37] *Id.* at 1314.

[38] *Id.* at 1314.

the lien has not been named a party.

Similarly, if this Court were to hold that a final judgment establishing the validity of a lien against the owner of the property was not enforceable against other creditors of the judgment debtor, it would completely undermine the purpose of the PWA.[39]

**Conclusion**

Because no facts are in dispute, summary judgment is appropriate. For the reasons assigned above, Whitney and Englobal have no right to attack the IPT Judgment. Accordingly, the Court will grant the Motion for Partial Summary Judgment filed by IPT and deny the Motion to Strike filed by Englobal. A separate Judgment will be entered in accord with this ruling.

New Orleans, Louisiana, July 22, 2011.

Hon. Elizabeth W. Magner
U.S. Bankruptcy Judge

---

[39]

The Private Works Act was enacted to facilitate construction of improvements on immovable property and does so by granting to subcontractors, among others, two rights to facilitate recovery of costs of their work from the owner with whom they lack privity of contract. ...

*Byron Montz, Inc. v. Conco Const., Inc.*, 824 So.2d 498, 502, 2002-0195 (La.App. 4 Cir. 2002).