UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: | CASE NO. |
| **SOUTH LOUISIANA ETHANOL, LLC** | 09-12676 |
| | SECTION A |
| DEBTOR | CHAPTER 11 |
| **SOUTH LOUISIANA ETHANOL, LLC** | ADVERSARY NO. |
| PLAINTIFF | 09-1119 |
| VERSUS | |
| **WHITNEY NATIONAL BANK, ET AL** | |
| DEFENDANTS | |

## REASONS FOR DECISION

On January 20, 2012, the Motion for Authority to Distribute Funds[1] ("Motion") filed by Industrial Process Technology, Inc. ("IPT") came before the Court. The Motion and Opposition thereto adopt and encompass the positions taken by the parties in their Answers to the Complaint of South Louisiana Ethanol, LLC ("SLE") and the cross claim asserted by IPT against Englobal Engineering, Inc. and Englobal Construction Resources, Inc.'s (collectively "Englobal"). At the conclusion of argument, the Court took the matter under advisement.

**I. Jurisdiction**

At issue is the proof of claim of IPT. The liquidation of disputed claims against the estate falls within the core jurisdiction of this Court.[2] The liquidation of claims against the estate is also

---

[1] Adv. 09-1119, pleading 577; case no. 09-12676, pleading 611.

[2] 28 U.S.C. § 157(2)(B).

a matter properly assigned under the United States Constitution to an Article I court for final determination.

The Bankruptcy Code is an administrative scheme confected by Congress that creates, in favor of claimants, specific, public rights to a debtor's estate while bestowing other public rights in favor of debtors.[3] The bankruptcy court's power to determine both a claimant's right and priority to distribution from the estate has long been affirmed by various courts.[4] Accordingly, this Court has jurisdiction over this matter.

**II. Facts**

On September 10, 2009, SLE filed a Complaint Seeking a Declaratory Judgment As To The Validity, Priority, Rank, And Extent Of Asserted Security Interests In Property Of The Debtor ("Complaint"). The Complaint named fifteen (15) parties defendant, including IPT and Englobal, and challenged the validity of liens and security interests allegedly encumbering the movable and immovable property comprising SLE's ethanol facility ("Ethanol Plant").

IPT answered the Complaint on October 9, 2009, and added its own Counterclaim and Cross Claims.[5] The Cross Claims included one (1) against Englobal, in which IPT asserted a first priority

---

[3] *See e.g.* the priority of distributions to unsecured claimants is dictated by 11 U.S.C. §§ 502, 503, 1129, 1325 and not by state law. Similarly, 11 U.S.C. § 363 grants protection to creditors secured by cash collateral or to co-owners or tenants for the estate's use, sale, or lease of property. These protections are creations of the bankruptcy law not otherwise available under federal or state law.

[4] Eight (8) justices of the present United States Supreme Court have indicated that a bankruptcy court's exercise of power over the liquidation of proofs of claim was a constitutional delegation of power from Congress. See, *Stern v. Marshall*, 131 S.Ct. 2594, 180 L.Ed.2d 475 (2011). The eight (8) were comprised from both the majority and dissent. Only Justice Scalia declined to express an opinion on the subject in a concurring opinion. *Id*. at 2620-2621.

[5] P-34.

lien, superior in rank to Englobal and all other claims, against the Ethanol Plant.[6] Englobal filed an Answer and Cross Claims alleging its own superior ranking over the same assets.[7]

One of the primary contests incorporated by the Complaint was the validity, ranking and extent of the various claims asserted by Whitney National Bank ("Whitney") and Englobal. Specifically, Whitney claimed a first priority security interest in all property located at the Ethanol Plant. It also challenged the ranking of various Louisiana Private Works Act ("PWA") claimants, including Englobal[8] and IPT. Englobal challenged the validity of the same PWA claims; the extent and validity of Whitney's security interest over movables; as well as, the ranking of Whitney's security interest in immovables. After much discovery and litigation, Whitney, SLE, and Englobal reached a settlement regarding the claims each held against the other ("Settlement"). By Order dated October 26, 2010, this Court affirmed and enforced the terms of the Settlement as to Whitney, Englobal, and SLE.[9] Initially, Englobal appealed this ruling but subsequently abandoned that appeal. By summary judgment or trial on the merits, the claims of all other parties to the SLE Complaint, all Cross Claims, and Counterclaims have been awarded judgment.

As a result of these rulings, Whitney was recognized as holding a first lien and security interest against the movable property owned by SLE. In addition, the judgment of IPT has been upheld by this Court and its PWA lien recognized as to all parties participating in the suit filed for

---

[6] P-34, pgs 8, 10-11.

[7] P-40, pgs. 5, 15-16.

[8] Englobal claims that it has a PWA lien. It also alleges a secured position as a result of a collateral mortgage recorded against the Ethanol Plant and encumbering immovable property. No party has questioned the validity of Englobal's collateral mortgage. However, the ranking of its mortgage *vis-a-vis* other security interests was at issue.

[9] Case 09-12676, pleading 235.

its recognition, namely SLE, J&C Welding and Fabrication, Inc.("J&C") , and Englobal.[10] Since no other party has challenged IPT's lien, the security interest in favor of IPT has been recognized as valid and enforceable against the immovable property of SLE.[11] Except for Whitney, IPT, and Englobal, all other defendants' secured claims have been invalidated and disallowed.[12]

The Ethanol Plant was sold by SLE through a court approved auction process. Approximately, $6,802,000.00 was netted for the Estate after satisfying the costs of sale and administrative claims associated with the litigation of SLE's Complaint.[13] Under the terms of the Settlement, Englobal and Whitney agreed that upon a global sale of the Ethanol Plant, the proceeds of sale would be divided between movable and immovable property based on appraisals obtained by SLE, Whitney, or Englobal. Costs of sale and administrative expenses would be allocated for satisfaction between the two (2) shares. The amount allocated to movables, after the satisfaction of costs of sale and administrative expenses, was payable to Whitney. From the amounts allocated to immovable assets, sixty percent (60%) would be payable to Whitney and the remaining forty percent (40%) to Englobal. In addition, certain claims against the movable or immovable property would be challenged, settled, or litigated by one or the other of them with the responsible party satisfying

---

[10] Case 09-1119, pleadings 544, 545.

[11] Whitney has conceded, based on the Settlement, that its security interest in immovable property is ranked behind valid PWA claims. Further, because under the terms of the Settlement, Englobal is responsible for the claim by IPT, Whitney has not pressed its challenge of IPT's PWA lien.

[12] The claims of RB Ethanol, LLC ("RB") have not been addressed. However, the confirmed plan of reorganization provides that RB is totally undersecured. No distribution to unsecured creditors is anticipated. Case 09-12676, pleading 474, exhibit A, p. 18.

[13] Case 09-12676, pleading 608.

any award in favor of the challenged claim out of its share of the proceeds.[14]

By Order dated December 6, 2011,[15] allocating the sale proceeds (" Allocation Order"), Whitney received $1,581,628.00[16] and Englobal $1,054,418.67[17] from the proceeds of sale. However, because the Settlement required Englobal to satisfy the claims of IPT, the Allocation Order also withheld $845,529.02 from the amounts distributable to Englobal until the disputes between IPT and Englobal were resolved.[18] The Allocation Order provided that the rights of IPT asserted in adversary 09-1119 "are preserved and unaffected by this Order."[19]

What remains for determination both under the Complaint, Answers thereto, Counterclaims, and Cross Claims are the following issues:

1. The amount of services preformed by IPT after its license was issued by the State of Louisiana;

2. The validity of Englobal's PWA lien claim; and

3. The relative ranking of Englobal and IPT's claims on immovable property.

---

[14] Whitney was responsible for the claims of Benchmark Design USA, Inc. ("Benchmark") while Englobal was bound to satisfy the claims of J&C and IPT. Benchmark, SLE, and Whitney reached an agreement. Case 09-12676, pleadings 144, 167. The Court ruled that J&C's lien is effective against SLE and Englobal, but not as to all other parties. Case 09-1119, pleading 456. Subsequently, J&C and SLE stipulated to dismissal without prejudice of all claims asserted by J&C against SLE. Case 09-1119, pleading 570.

[15] Case 09-12676, pleading 608.

[16] Whitney also received a distribution of $4,870,561.74 based on the value of movables sold..

[17] Case 09-12676, pleading 608.

[18] The money is currently in the court registry. Pleading 615.

[19] P-608, ¶ ¶ 6, 7, 8, 9.

**A. IPT's PWA Claim**

Prepetition, IPT sued SLE, J&C, and HPS Development, LLC in Federal District Court to liquidate its claim and recognize its lien.[20] Englobal attempted to intervene, but was denied. Judgment was rendered in favor of IPT in the amount of $733,336.46, plus judicial interest from the date of demand and all court costs ("IPT Judgment"). The IPT Judgment also recognized the lien of IPT.

Following entry of the IPT Judgment, on August 25, 2009, SLE filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code ("Petition Date"). IPT filed proof of claim 10 ("Claim") for the secured amount of $810,421.18, which includes pre-judgment interest of $75,744.6, state court costs of $990.10, and federal court costs of $350.00. IPT also seeks post-judgment interest in an amount stated as "TBD."

As to IPT's claim, the Court has previously held:

1. IPT's lien only secures money owed for work performed on contracts entered into after January 25, 2007, or when IPT became Louisiana licensed ("Tradewinds Ruling").[21]

2. The IPT Judgment is *res judicata* as to Englobal and SLE.[22]

IPT and Englobal stipulated to the following facts at the hearing:

---

[20] *IPT v. J&C Welding Fabrication, Inc., et al*, 08-cv-04008, U. S. District Court, Eastern District of Louisiana.

[21] Adv. 09-1119, pleading 537.

[22] Adv. 09-1119, pleadings 544, 545.

6

    1.    All amounts claimed by IPT under its Claim were for work performed on contracts entered into after IPT became Louisiana licensed.

    2.    Englobal was not a Louisiana licensed contractor at the time it performed services under its contracts with SLE.

    3.    Work began on SLE's property prior to the date Whitney recorded its mortgage.

### III. Law and Analysis

#### A. Lien Ranking

Englobal avers that it and IPT, as subcontractors, are equal in rank as lien creditors against SLE. As a result, they share *pari passu* in all distributions payable to any PWA claimant.[23] IPT asserts that Englobal does not have a valid PWA lien because it was not a Louisiana licensed contractor during the period when work was preformed. Englobal counters that IPT has no standing or has waived its right to contest the validity of its lien.

#### 1. IPT's Standing to Challenge Englobal's PWA Lien

Under the allegations of its Answer, Counterclaim, and Cross Claim, IPT specifically alleged the validity of its secured position, its first priority ranking, and its superior status to all other claims including, but not limited to, those of Englobal.[24] As such, the Cross Claim preserved IPT's right to challenge the validity, ranking, and extent of Englobal's PWA claim.

#### 2. Waiver or Estoppel

Englobal avers that, pursuant to the Settlement or actions taken subsequent to the filing of IPT's Answer, IPT has waived, or is barred from challenging, the PWA claim of Englobal.

#### a. Estoppel

---

[23] La. R.S. 9:4821(2) provides that the liens of laborers rank equally with each other.

[24] P-34, pp. 8, 10-11.

7

Englobal asserts that IPT has taken positions throughout these proceedings which are inconsistent with its claim to a first and superior position against SLE's property. Judicial estoppel "prevents a party from asserting a position in a legal proceeding that is contrary to a position previously taken."[25]

Englobal asserts that in connection with Whitney's Motion for Determination and Authority for SLE to Distribute Proceeds of Sale ("Motion to Distribute"),[26] IPT took legal positions inconsistent with its position as a first priority, superior PWA claimant. As a result, IPT is estopped from challenging Englobal's lien.

Whitney's Motion to Distribute sought payment of the amounts due to it under the Settlement. In support of its request, Whitney cited this Court's previous ruling recognizing Whitney's security interest in the movable equipment as both valid and superior in rank to all other claims. Both IPT and Englobal objected to the Motion to Distribute.

Englobal's Response disputed the allocation of costs of sale and administrative expenses against the sale proceeds.[27] IPT's Objection expressed its concern over preserving its claims against the immovable proceeds.[28] However, IPT did not dispute the allocation of proceeds between

---

[25] *Ergo Science, Inc. v. Martin*, 73 F.3d 595, 598 (5th Cir. 1996).

[26] Case 09-12676, pleading 564. The Motion to Distribute ultimately resulted in the Allocation Order.

[27] Case 09-12676, pleading 582.

[28] Case 09-12676, pleading 580. IPT has no claim to movable property.

movable or immovable property asserted by Whitney.[29] Englobal asserts that by failing to object to the allocation of the sale proceeds between movable and immovable assets, IPT acknowledged Whitney's position as superior in rank and Englobal's PWA lien.

Englobal's position fails for several reasons. First, IPT objected to the Motion to Distribute. Specifically, IPT asserted that its lien was ranked first as to SLE's immovable property; demanded the amount due IPT be held by SLE until further Court order; and "[a]fter this amount is paid, then an apportionment [] occur between" Englobal and Whitney.[30] When the Court questioned why the entire proceeds had to be retained pending the conclusion of the dispute between IPT and Englobal, the parties agreed that withholding from distribution an amount sufficient to satisfy IPT's claim would preserve all rights between the parties until a trial on the merits could be conducted.[31] Once this was agreed, the division of funds between Whitney and Englobal was the only remaining issue and was calculated as required by their Settlement.

IPT's position was pragmatic and consistent with its legal position. Given that the amounts withheld were in excess of the amounts owed to IPT, challenge of the allocation between proceeds attributable to movable versus immovable property was senseless as was any argument that Whitney's share of immovable proceeds be withheld.

---

[29] Whitney's proposed allocation was based on the Settlement. However, the amounts derived by the Settlement were in turn based on inventories and appraisals obtained by SLE, Whitney, and Englobal during this proceeding. Thus, an independent basis for the allocation, separate and apart from the enforcement of the Settlement, existed.

[30] Case 09-12676, pleading 580, paragraphs 18, 19, 20.

[31] Case 09-12676, 10/11/11 Tr. T. 12:21-13:13; 63:15-64:12; 83:8-12.

Englobal further argues that IPT waived its right to dispute the validity of Englobal's lien by not doing so earlier in the case and by allowing Whitney to be paid before IPT. The Court disagrees. IPT did in fact dispute Englobal's lien in its Cross Claim.[32] IPT also secured a provision in the Allocation Order preserving its rights. The result is that Whitney's distribution had no effect on IPT's claims which were preserved.

### b. Stipulation *Pour Autri*

Englobal also asserts that IPT is a third party beneficiary to the Settlement and confirmed plan of reorganization ("Plan"). As such, IPT is bound by the terms of the Settlement and can only bring claims or defenses preserved in favor of SLE or Whitney. Englobal argues that since Whitney and SLE released the right to dispute the validity of Englobal's PWA lien under the Settlement, IPT is also bound by that release.

IPT did not agree to and is not a party to the Settlement. Englobal argues that the Settlement contains a stipulation *pour autri* in favor of IPT binding it to its terms. Three (3) criteria must exist in the case of a stipulation *pour autri* or benefit to a third party: 1) the stipulation in favor of the third party is manifestly clear; 2) there is certainty as to the benefit provided the third party; and 3) the benefit is not a mere incident of the contract between the promisor and the promisee.[33]

---

[32] Adversary 09-1119, pleading 34.

[33] *Joseph v. Hospital Service Dist. No. 2 of Parish of St. Mary*, 939 So.2d 1206, 1212 (La. 2006).

IPT does not dispute, and the Court agrees, that the contract provides a benefit to a third party, IPT. However, if a third party does not seek to avail itself of the contract as a third party beneficiary, it is not bound by the terms of the contract to which it is not a party.[34] On the other hand, if a third party claims benefits under a contract, it is bound by the contract's terms.[35]

Englobal argues that IPT admitted it is a third party beneficiary by stating in its Motion that "[t]he other parties to this proceeding [including itself] were rendered third party beneficiaries of the agreement who retained all rights and interests."[36] The Court finds this argument unpersuasive. IPT acknowledged that the Settlement provided for its benefit. However, IPT also stated that it "retained all rights and interest" and has not sought to enforce the Settlement. Instead, in the Motion, IPT argues the merits of its lien and prays for "distribution from the proceeds of the sale of SLE's immovable property."[37] Nothing in the Objection or its ultimate litigation sought enforcement of the Settlement, quite the contrary. IPT maintained its right to challenge all claims to alleged priming liens and preserved its rights. However, based on the escrow of funds sufficient to pay its Claim, it was unnecessary for IPT to challenge either the allocation of funds between Whitney and Englobal or the values assigned to the movable versus immovable assets sold.

Englobal also argues that SLE's Plan names IPT as a third party beneficiary of the Settlement, and, therefore, IPT is bound by its terms. As to IPT, Class 6 of the Plan states:

> Notwithstanding all of the above, this class claimant is named a third party

---

[34] *Rugg v. FMR Co, Inc.*, 2010 WL 3733901, *7 (W.D.La. 2010) (citing *Bridas SAPIC v. Govt. of Turkmenistan*, 345 F.3d 363 (5th Cir. 2003)).

[35] *Hillard v. U.S*, 2007 WL 647292 (E.D.La. 2007).

[36] Case 09-12676, pleading 612, p. 6.

[37] *Id.* at p. 8.

> beneficiary of a settlement by and between SLE, Whitney, and Englobal entities (EEI and ECRI), and may receive compensation directly from Englobal if the settlement becomes final.[38]

The fact that the Plan states that IPT is a third party beneficiary to the Settlement does not mean that IPT has sought to enforce the Settlement. If a third party does not seek to avail itself of the contract as a third party beneficiary, it is not bound by the terms of the contract to which it is not a party.[39]

Because IPT is seeking recovery based on its lien, rather than the Settlement, it is not bound by the terms of the Settlement and does not stand in the shoes of Whitney and SLE. Therefore, IPT has not waived its right to challenge the validity of Englobal's lien.

### B. Englobal's PWA Lien

IPT argues that Englobal's PWA lien is invalid because it was not a Louisiana licensed contractor when it performed work for SLE. It is settled under Louisiana law that "a contracting agreement entered into without the benefit of a contractor's license is null and void." The parties have stipulated that Englobal was not a Louisiana licensed contractor during the period of time when services were performed for SLE. Therefore, it cannot maintain a PWA lien for these charges.

If there is no construction contract, Englobal may recover "the actual cost of materials, services and labor" under a theory of unjust enrichment, without entitlement to profit or overhead.[40] However, the amounts awarded under *quantum meruit* are not secured by a PWA lien. As a result, Englobal's distribution is awarded based on its collateral mortgage which is subordinate in rank to

---

[38] Case 09-12676, pleading 474, p. 17.

[39] *Rugg v. FMR Co, Inc.*, 2010 WL 3733901, *7 (W.D.La. 2010) (citing *Bridas SAPIC v. Govt. of Turkmenistan*, 345 F.3d 363 (5th Cir. 2003)).

[40] *Tradewinds Environmental Restoration, Inc. v. St. Tammany Park, LLC,* 578 F.3d 255, 260 (5th Cir. 2009) (quoting *Alonzo v. Chifici*, 526 So.2d 237, 243 (La.App. 5 Cir. 1988)).

IPT's PWA lien.

At the hearing on this matter, Englobal asserted, belatedly, that it is entitled to claim a PWA lien for goods supplied under its contract citing the Tradewinds Ruling. Englobal's position correctly cites this Court's previous ruling. However, despite direct challenge to its claim, significant discovery and a noticed trial date, Englobal failed to supply any evidence as to the amount of materials supplied to SLE and contained in its claim. As a result, it has failed to meet its burden of proof.

Because Englobal's PWA lien is invalid, it does not rank equally and does not share *pari passu* with IPT. However, because of Englobal's collateral mortgage, it does enjoy a secured claim against the immovable property subordinate in rank to IPT. As a result, after the satisfaction of IPT's claim, the amounts withheld as per the Allocation Order are payable to Englobal.

**C. Interest**

IPT argues that it is entitled to interest on its Claim. The Plan provides in the definition of "Allowed Amount":

> Unless otherwise specified herein or in a Final Order, the Allowed Amount of any Claim shall not include interest accruing on such Claim from and after the Petition Date.[41]

IPT did not object to this provision and the Plan has been confirmed. Therefore, post-petition interest on IPT's claim is disallowed.

---

[41] Case 09-12676, pleading 474, section 1.06.

**IV. Allowed Claim of IPT**

IPT's Claim is for the secured amount of $810,421.18, which includes pre-judgment interest of $75,744.6, state court costs of $990.10, and federal court costs of $350.00. For the reasons stated above, the Claim of IPT is allowed in full. IPT is also allowed post-judgment judicial interest from the judgment date until the Petition Date, which is $1,250.98 based on the federal judicial interest rate. Therefore, IPT has a total allowed claim of $811,672.16, which is to be paid from the amount withheld as per the Allocation Order. The difference, if any, of the sums maintained in the registry of the Court are distributable to Englobal in partial satisfaction of its collateral mortgage.

New Orleans, Louisiana, February 15, 2012.

Hon. Elizabeth W. Magner

U.S. Bankruptcy Judge